IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

GERALD MOSES                                                                                          PLAINTIFF

v.                                CASE NO. 4:15cv33-JM

DASSAULT FALCON JET – WILIMGTON CORP.
And DASSAULT FALCON JET CORP.                                                      DEFENDANTS

ORDER

Pending is the motion for summary judgment filed by Defendants Dassault Falcon Jet—Wilmington Corp. and Dassault Falcon Jet Corp. (DFJ). Plaintiff has responded, and Defendants have filed a reply. For the reasons stated below, the motion is granted.

Background Facts

This is an employment discrimination case brought under federal and Arkansas state law. Specifically, Plaintiff Gerald Moses alleges violations of the Aged Discrimination in Employment Act (ADEA), disability discrimination and retaliation in violation of the Americans With Disabilities Act (ADA), and related state law claims under the Arkansas Civil Rights of 1993 (ACRA).

The following facts are taken largely from Defendants' statement of facts to the extent that they were undisputed by Moses. DFJ manufactures jet aircraft. Gerald Moses began working for DFJ at its completion center in Little Rock in 1997. In 2012 and 2013, Moses's job title was Flight Line Avionics Checkout. His duties included joining the pilot on test flights of the completed jet aircraft.

On August 12, 2013, Moses told that a Gregg Gibbs, a Human Resource Generalist at DFS, that he was having trouble concentrating on his duties, and that it might have been because

of the number of medications he was taking. He had previously undergone two neck surgeries and was on daily pain management medication. He also asked about early retirement. On September 12, 2013, Dr. Scott Carle conducted an independent medical exam and determined that Moses could not perform the essential functions of his job. In his report, he concluded that Moses was not able to adequately perform the physical and medical aspects relating to the core functions of his job, including needing a "clear level of unimpaired executive functioning." Dr. Carle also noted that it would be a significant risk for Moses to work 25 feet off of ground level due to the fall risk associated with the medications he was taking. The report also concluded that there were no known accommodations of the essential functions of his job as a Flight Line Avionics Checkout, and that the duration of his restrictions would be considered permanent. While he doesn't challenge the findings in the report, Moses does not think the examination was fair as it was very short, and Dr. Carle did not take into consideration the effects to his health and job performance from what Moses perceived to be a long-term hostile work environment and harassment.

On October 17, 2013, DFJ placed Moses on medical leave. Moses was never treated by any other doctor stating that Dr. Carle's conclusions were incorrect. On November 12, 2013, Moses filed an EEOC complaint against DFJ alleging that he was harassed because of his age in violation of the ADEA and harassed and suspended because of his disability and in retaliation for complaining in violation of the ADA. On January 16, 2014, DFJ offered Moses a position in the Security Department, a job with duties that fell within the parameters of Dr. Carle's IME; Moses never accepted the job. It is his position that the job did not pay enough and it would have put him in a position at the guard shack where everybody at DFJ would make fun of him.

On February 18, 2014, Moses's attending physician, Dr. Richard Heck, signed a statement of functionality in conjunction with Moses's application for disability benefits. Dr. Heck stated that Moses's restrictions were "permanent" and that his "major depression and confusion continue to worsen." Dr. Heck further stated that Moses "takes [a] significant amount of pain medications." Finally, Dr. Heck concluded that Moses does have a psychiatric/cognitive impairment, being "major depression, confusion, possible bipolar disorder."

On May 30, 2014, the EEOC dismissed the complaint and gave Moses his right to sue. On June 18, 2014, DFJ sent Moses a letter terminating his employment effective June 19, 2014. Moses was 59 years old at the time he was terminated.

## Summary Judgment Standard

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988)) (citations omitted).  Only disputes over facts that may affect the outcome of the suit

under governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To survive a motion for summary judgment on claims of disability or age discrimination, a plaintiff must prove either direct evidence of discrimination or proceed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).

Defendants have moved for summary judgment asserting six grounds. The Court will address them as presented in the motion.

## DFJ-Wilmington

Defendants argue that DFJ-Wilmington was never Moses's employer and should be dismissed. Plaintiff agrees, and this portion of Defendants' motion is granted, and the claims against DFJ-Wilmington Corp. are dismissed.

## Federal Claims and EEOC Charge

DFJ seek summary judgment on Moses's June 18, 2014 termination on the basis that Moses failed to exhaust his administrative remedies. The Court agrees. Moses filed an EEOC charge on November 12, 2013, alleging that he was harassed because of his age in violation of the ADEA and harassed and suspended because of his disability and in retaliation for complaining in violation of the ADA. On May 30, 2014, the EEOC dismissed the charge and issued Moses a right to sue letter. Following his termination in June, Moses did not file a new charge of with the EEOC. With this, DFJ has sufficiently proven that Moses has failed to exhaust his administrative remedies.

Moses argues that his termination was part of a continuing violation that was included in his originally filed EEOC charge. This argument, is foreclosed by the Supreme Court's decision

in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002): "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." *Id.* at 114. *See also Wilkes v. Nucor-Yamato Steel Co.*, No. 3:14-CV-00224-KGB, 2015 WL 5725771, at *10 (E.D. Ark. Sept. 29, 2015). DFS's motion for summary judgment on the failure to exhaust administrative remedies regarding his unlawful termination claim is granted.

### Age and Perceived Disability Claims under the ACRA

Moses agrees with DFJ's argument that the ACRA does not permit a claim of discrimination based solely on age, and that dismissal of this claim is proper. Regarding the perceived disability claim, Moses stated in his response that he is not making such a claim, but rather is making a claim for actual disabilities. To the extent that the amended complaint attempts to state a claim under the ACRA claim for perceived disabilities, the motion for summary judgment is granted.

### Harassment Claims

Moses alleges in his amended complaint that he was subjected to continuous acts of harassment and bullying by his supervisors and co-workers. Specifically, he alleges that he was accused of being drunk at work, having his tools stolen, and his work sabotaged, and he concludes that these actions against him were based upon his known disability, his age, and in retaliation for having lodged a complaint. Defendant argues in its motion for summary judgment that there is no proof that the alleged harassment was because of his age or disability. Defendant further argues that the alleged harassment does not rise to an actionable level sufficient to create a hostile work environment. The Court agrees. The following excerpts are taken from Moses's

deposition:

> A: Yeah. There was a lot of bullying going on, and it started -- it started back in 2001. I took a – a lead position on the second shift, and what I did is I would sell like 13 ops and some of the other leads wouldn't sell any. Well, the guy -- one lead come to me, and he said, You'd better watch it. He said, You're making everybody look bad. I said, I'm not making them look bad. They make their self look bad. And that's when it all started, and these people here that did all this harassment to me are the same ones that was back in the other hangar. They would tear my work up.
>
> Q: And you believe this alleged harassment or bullying was because of your disability?
>
> A: Well, it's because they thought I was going to take their job.
>
> Q: So that's why you think you were being harassed?
>
> A: Yes.
>
> Q: Because they thought you were going to take their job?
>
> A: Right.

(Doc. 23-1, p.5)

When he was questioned specifically about harassment based on age discrimination, all Moses offered to prove this claim was the following:

> Q: Well, my question is, what other avionics check-out employee or employee in that group, avionics installer -- what other employee in that group who was younger than you was treated more favorably than you?
>
> A: Probably all of them.
>
> Q: All of them?
>
> A: As long as -- as long as you were Matt Shrum's friend, he give you the easy jobs and all that crap.
>
> Q: And it's your contention that they were treated more favorably because they were young?
>
> A: Yeah. When somebody deliberately burns a connector up and then blames it on me the next day, there's something really wrong with that.

6

> Q: My question is, were they treated more favorably because of their age or because they were Matt's friend?
>
> A: Probably both.

(Doc. 23-1, p. 28)

To prevail on his hostile work environment claim under the ADA or the ADEA, Moses must prove "that he is a member of the class of people protected by the statute, that he was subject to unwelcome harassment, that the harassment resulted from his membership in the protected class, and that the harassment was severe enough to affect the terms, conditions, or privileges of his employment." *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015) (quoting *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 778 (8th Cir. 2012) (internal quotations omitted). Moses has not presented sufficient evidence to show that the alleged harassment resulted from his membership in a protected class or that the alleged harassment was severe enough to affect the terms, conditions, or privileges of his employment. Defendant's motion for summary judgment on the harassment claims is granted.

## Failure to Accommodate Claim

The ADA defines a qualified individual as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8). A reasonable accommodation is defined as "[m]odifications or adjustments to the work environment ... that enable an individual with a disability who is qualified to perform the essential functions of that position." *Olsen v. Capital Region Med. Ctr.*, 713 F.3d 1149, 1154 (8th Cir. 2013) (citing 29 C.F.R. § 1630.2(*o*)(ii)). It is a plaintiff's burden to prove that a reasonable accommodation would enable him to perform his essential job functions. *Scruggs v. Pulaski Cty., Ark.*, 817 F.3d 1087, 1093 (8th Cir. 2016).

In this case, Moses asserts that he repeatedly requested accommodation in the form of having the source of the harassment (his supervisors Matt Shrum and Ron Hamsher) removed from his work environment. Even if DFJ had acquiesced to this accommodation, Moses has offered no proof to dispute the medical proof presented by the IME conducted by Dr. Carle and by his own treating physician, Dr. Heck. Without proof to rebut the evidence offered by Dr. Carle's report that Moses was not able to adequately perform the physical and medical aspects relating to the core functions of his job and that there were no known accommodations of the essential functions of his job as a Flight Line Avionics Checkout, Moses cannot survive the motion for summary judgment.

Retaliation Claim

Moses claims that DFJ retaliated against him in violation of the ADA because he requested accommodations for his disability. To establish unlawful retaliation under the ADA, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) the employer took an adverse action against him, and (3) there was a causal connection between the adverse action and the protected activity. *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013). The Court assumes for purposes of this motion that Moses's request that he be moved from under the supervision of Matt Shrum and Ron Homsher was a request for accommodation and, therefore, a statutorily protected activity. It is not questioned that Moses's termination constituted an adverse action. However, the Court finds that Moses cannot prove that there was a causal connection between the two. Even if Moses could prove a prima facie case of retaliation, he must discredit DFJ's asserted non-retaliatory reasons for his termination and ultimately show that the circumstance permit drawing a reasonable inference that the real reason for her termination was retaliation. *Logan v. Liberty Healthcare Corp.,* 416 F.3d 877, 880 (8th Cir.2005) "Evidence of

pretext and retaliation "is viewed in light of the employer's justification." *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 633 (8th Cir. 2016)(quoting *Smith v. Allen Health Sys.,* 302 F.3d 827, 834 (8th Cir.2002).

DFJ argues that the passage of eighth months between the start of Moses' medical leave in October 17, 2013, and his and his termination on June 19, 2014, requires dismissal of Moses's retaliation claim. While the Court does not agree that the passage of time alone dictates summary judgment in DFJ's favor, the Court finds that based on the unrebutted medical evidence, Moses cannot meet his burden of proving that the real reason for his termination was retaliation for requesting accommodation.

## Conclusion

The Defendants' motion for summary judgment (Document No. 23) is GRANTED, and Plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this 31st day of October, 2016.

_____
James M. Moody Jr.
United States District Judge